

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 31, 1948

The Board of Directors
The Texas State University for Negroes
2007 Petroleum Building
Houston 2, Texas

Attention: Mr. John H. Robertson,
Executive Assistant

Opinion No. V-645
Re: Whether a white appli-
cant may be admitted to
The Texas State Univer-
sity for Negroes.

Gentlemen:

You write that Mr. Jack Coffman, a white cit-
izen of Houston, who represents that he is a social
science major from Penn College, Oscaloosa, Iowa, de-
sires to be admitted to The Texas State University for
Negroes for the purpose of taking courses in social
science. You request an opinion as to whether he may
legally be admitted.

Section 7 of Article VII and related Arti-
cles of the Texas Constitution provide that separate
schools shall be provided for the white and colored stu-
dents and that impartial provision shall be made for
both.

The legislative act creating The Texas State
University for Negroes[1] provides that:

"It is the purpose of this Act to es-
tablish an <u>entirely separate</u> and equivalent
university of the first class for Negroes
. . ."

---

[1] Section 1, Senate Bill 140, Acts 50th Leg., Ch. 29, p.
36, carried as Art. 2643b, V.A.C.S.

With regard to which persons would be eligible for enrollment, the Act further provides in Section 12:

"The term 'qualified applicant' as used in this Act shall mean any colored person who meets the educational requirements . . . . The term 'colored person' (means) . . . a negro or person of African descent."

The Act is plain and unambiguous. It shows without question that the Legislature intended to create, and did create, an entirely separate university for Negroes. Under that Act, only Negroes may be admitted to The Texas State University for Negroes.

The sole remaining question is the constitutionality of the provisions of the Texas Constitution and the legislative Act creating the Negro University in the light of the Fourteenth Amendment to the Constitution of the United States, which provides that:

"No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

In February 1948, the Austin Court of Civil Appeals held in the case of Sweatt v. Painter that the State could constitutionally provide separate facilities for the education of Negroes and white students, so long as the facilities offered both groups were substantially equal.[2] That opinion followed a long line of cases by the Supreme Court of the United States to the same effect.

Thus in Plessy v. Ferguson, 163 U.S. 537, the Supreme Court of the United States said:

"The object of the (14th) Amendment was undoubtedly to enforce the absolute equality of the two races before the law, but in the nature of things it could not have been intended to abolish distinctions based upon color, or to enforce social, as

---

[2] 210 S.W.(2d) 442. The case is now pending on application for writ of error in the Supreme Court of Texas.

distinguished from political equality, or
a commingling of the two races upon terms
unsatisfactory to either.  Laws permit-
ting, and even requiring, their separa-
tion in places where they are liable to
be brought into contact do not necessari-
ly imply the inferiority of either race
to the other, and have been generally, if
not universally, recognized as within the
competency of the state legislatures in
the exercise of their police power.  The
most common instance of this is connected
with the establishment of separate schools
for white and colored children, which has
been held to be a valid exercise of the
legislative power even by courts of States
where the political rights of the colored
race have been longest and most earnestly
enforced. . . ."

Similarly in Cummings v. Board of Education,
175 U.S. 262, that Court stated:

"We may add that while all admit
that the benefits and burdens of public
taxation must be shared by citizens with-
out discrimination against any class on
account of their race, the education of
the people in schools maintained by state
taxation is a matter belonging to the re-
spective states, and any interference on
the part of Federal authority with the
management of such schools cannot be jus-
tified except in the case of a clear and
unmistakable disregard of rights secured
by the supreme law of the land. . . ."

And the opinion of the U. S. Supreme Court in
Gong Lum v. Rice, 275 U.S. 78, reads:

"The question here is whether a Chi-
nese citizen of the United States is de-
nied equal protection of the laws when he
is classed among the colored races and
furnished facilities for education equal
to that offered to all, whether white,
brown, yellow or black.  Were this a new
question, it would call for very full ar-
gument and consideration, but we think

that it is the same question which has
been many times decided to be within the
constitutional power of the state legis-
lature to settle without intervention of
the federal courts under the Federal Con-
stitution. . . .

". . . The decision is within the
discretion of the State in regulating its
public schools and does not conflict with
the Fourteenth Amendment.  The judgment
of the Supreme Court of Mississippi is af-
firmed."

In the recent case of Missouri (Gaines) v.
Canada, (1938) 305 U.S. 337, the Supreme Court of the
United States again recognized the state's right to pro-
vide separate facilities for Negro and white students.
Its decision reiterates:

"The State has sought to fulfill
that obligation by furnishing equal fa-
cilities in separate schools, a method
the validity of which has been sustained
by our decisions. . . ."

The Gaines case was cited with approval in 1948
in Sipuel v. The University of Oklahoma, 68 S.Ct. 299.
There are no cases from the U. S. Supreme Court to the
contrary.

Under these decisions, it is unquestionably now
the law that the states may constitutionally provide sep-
arate facilities for the education of Negro and white
students so long as the facilities offered both groups
are substantially equal.

The people of Texas in their Constitution, and
the Legislature in its enactments, have adopted the pol-
icy that white and Negro students should be educated
separately.  The law operates to prohibit a white per-
son's entrance to the Negro University as well as pro-
hibiting the entrance of a Negro to the white University.
The law is and must be applicable equally to both white
and Negro citizens.

The University of Texas offers a wide variety
of social science courses.  The physical facilities and
scholastic opportunities offered to white students at

that institution, and other State supported colleges for white students, are substantially equal to those offered Negro students at The Texas State University for Negroes. You are therefore advised that Mr. Coffman may not legally be admitted to The Texas State University for Negroes.

### SUMMARY

Since the Texas Constitution and laws provide that white and Negro students shall be educated separately, and since substantially equal courses of study and physical facilities are offered for white students at The University of Texas and other State colleges, a white student may not legally be admitted to The Texas State University for Negroes. Constitution of Texas, Article VII, Section 7; Sweatt v. Painter, 210 S.W.(2d) 442.

Yours very truly,

Price Daniel
Attorney General of Texas

Joe R. Greenhill
Executive Assistant